[No. B214393. Second Dist., Div. Four. Sept. 28, 2010.]

LAUREN CARTER, Plaintiff and Respondent, v.
JERRY COHEN, Defendant and Appellant.

**COUNSEL**

Levinson Arshonsky & Kurtz and James S. Cooper for Defendant and Appellant.

Kane Law Firm, Brad S. Kane and Tamara Droubi for Plaintiff and Respondent.

OPINION

MANELLA, J.—Respondent Lauren Carter sued her landlord, appellant Jerry Cohen, alleging that her rent payments contravened the Los Angeles Rent Stabilization Ordinance (L.A. Mun. Code, § 151.00 et seq.) (RSO).[1] After a jury found that Carter was entitled to damages of $11,590 for overpayment of rent, the trial court awarded her $25,575 in attorney fees under a fee-shifting provision of the RSO. Cohen challenges the award of damages on the ground that the rental agreement was unlawful; in addition, he maintains that the fee award was improper because Carter's damages were recoverable in a limited civil case. We affirm the judgment in its entirety.

## RELEVANT FACTUAL AND PROCEDURAL HISTORY

In 2002, Carter entered into a lease agreement with Ree Whitford regarding a guesthouse in North Hollywood. The guesthouse contained two rooms with a kitchen area, and was detached from a house on the same property. The guesthouse had been constructed without building permits, and was not registered under the RSO. From 2002 to 2004, Carter paid Whitford $890 per month in rent.

In September 2004, Cohen, an attorney, bought the house and its guesthouse from Whitford, and increased Carter's monthly rent to $1,475. A year later, in September 2005, he raised the monthly rent to $1,585. When Cohen increased the monthly rent to $1,685, effective November 1, 2006, Carter gave Cohen a 30-day notice of her intent to move out of the guesthouse, and they fell into a dispute regarding whether Carter's security deposit should be applied against her final rent payment. Cohen began proceedings to evict Carter, but voluntarily dismissed them after Carter vacated the premises. On November 8, 2006, the Los Angeles Department of Building and Safety declared the guesthouse "substandard," finding " 'unapproved occupancy' " in a structure " 'constructed without the required permits' " and " 'not designed or intended to be used for such occupancies.' "

Carter initiated the underlying action on July 16, 2007. Carter's complaint alleged, inter alia, that Cohen had increased her rent in contravention of the RSO. Carter asserted two claims under the RSO, seeking disgorgement of the entire rent she had paid to Cohen, or alternatively, the rent she had paid in excess of the limits set by the RSO, together with penalties provided under the RSO (L.A. Mun. Code, § 151.10, subd. A). In addition, she asserted two

---

[1] All statutory citations are to the Los Angeles Municipal Code, unless otherwise indicated.

claims under state rental statutes (Civ. Code, §§ 1941.1, subd. (d), 1950.5, subd. (*l*)) and a claim for unfair business practices.[2]

Carter's claims were dismissed or abandoned, with the exception of her claim for disgorgement of the rent she had paid in excess of the RSO limits. On July 16, 2008, a jury determined that Carter's excess rent payments amounted to $11,590. Carter subsequently sought her attorney fees and the trebling of the jury's award pursuant to the penalty provisions of the RSO (§ 151.10, subd. A). The trial court awarded Carter $25,575 in attorney fees, but declined to treble the jury's award; in addition, the trial court awarded $5,427.01 in other costs.[3] On November 14, 2008, judgment was entered in Carter's favor. This appeal followed.

## DISCUSSION

Cohen contends that the trial court erred in (1) permitting Carter to assert a claim under the RSO for excessive rental payments, and (2) awarding attorney fees to Carter under a fee-shifting provision of the RSO.

### A. *Claim for Excess Rent Payments*

Cohen contends that Carter's claim for excess rent payments under the RSO failed as a matter of law because Carter's rental agreement was unlawful and the guesthouse fell outside the RSO. He maintains that Carter was entitled to recover her rental payments only to the extent they exceeded the reasonable rental value of the guesthouse. For the reasons explained below, we reject his contentions.

### 1. *RSO*

We begin by examining the RSO and other pertinent provisions of the Los Angeles Municipal Code. In 1979, the Los Angeles City Council enacted the RSO in an effort to regulate rent increases due to a housing shortage. (*Klarfeld v. Berg* (1981) 29 Cal.3d 893, 895–896 [176 Cal.Rptr. 539, 633 P.2d 204].) The legislative purposes of the RSO are declared in section 151.01: "There is a shortage of decent, safe and sanitary housing in the City of Los Angeles resulting in a critically low vacancy factor. [¶] . . . [¶] Therefore, it is necessary and reasonable to regulate rents so as to safeguard tenants from

---

[2] Cohen filed a cross-complaint against Carter that he dismissed with prejudice before trial.

[3] The trial court declined to treble the damages under section 151.10, reasoning (1) that Cohen's failure to register the guesthouse was not willful, and (2) that a rent control statute (Civ. Code, § 1947.11) permits such damage enhancements only when the landlord's misconduct is willful or intentional.

excessive rent increases, while at the same time providing landlords with just and reasonable returns from their rental units."

The RSO established measures to regulate rents and created the Rent Adjustment Commission of the City of Los Angeles to enforce them (§ 151.03). Central to the RSO is a provision governing permissible rent adjustments (§ 151.06). Absent special circumstances, the RSO permits a landlord to impose a "maximum adjusted rent" during a given period— determined by a baseline "maximum rent" for a preceding period and an allowable adjustment, which is ordinarily a percentage of the baseline "maximum rent." (§§ 151.02, 151.06, 151.07.) Regarding such adjustments, section 151.04, subdivision A states: "It shall be unlawful for any landlord to demand, accept or retain more than the maximum adjusted rent permitted pursuant to this chapter or regulation or orders adopted pursuant to this chapter." Section 151.05, subdivision A further obliges landlords to register rental units, and provides that "after April 30, 1983, no landlord shall demand or accept rent for a rental unit without first serving a copy of a valid registration or annual registration renewal statement on the tenant of that rental unit."

The RSO also established remedies for its violation (§ 151.10). Pertinent here is section 151.10, subdivision A, which states: "Any person who demands, accepts or retains any payment of rent in excess of the maximum rent or maximum adjusted rent in violation of the provisions of this chapter . . . shall be liable in a civil action to the person from whom such payment is demanded, accepted or retained for damages of three times the amount by which the payment or payments demanded, accepted or retained exceed the maximum rent or maximum adjusted rent which could be lawfully demanded, accepted or retained together with reasonable attorneys' fees and costs as determined by the court."

Also relevant to our inquiry are provisions of the Los Angeles Municipal Code not located within the RSO that regulate the occupancy of any structure. Generally, section 12.21 prohibits the use of any structure or building in the absence of "all permits and licenses required by all laws and ordinances." Section 12.26, subdivision E.1 further provides that "no building erected or structurally altered shall be occupied or used until a certificate of occupancy shall have been issued . . . ." A certificate of occupancy is issued only when a structure is completed in conformity with the Los Angeles Municipal Code. (*Pope v. State Bd. of Equalization* (1983) 146 Cal.App.3d 1132, 1139 [194 Cal.Rptr. 883].)

### 2. *Underlying Proceedings*

Prior to trial, Cohen contended (1) that Carter's rental agreement was unlawful because the guesthouse had been constructed without the requisite

building permits, and (2) that the RSO was inapplicable to an "illegal property." He maintained that Carter could seek nothing more than restitution, which limited her recovery to her rent payments in excess of the "reasonable rental value." In ruling on the parties' motions in limine, the trial court concluded that despite the unlawful rental agreement, Carter was entitled to assert her claim to recover rent paid in excess of the RSO limit; the trial court further found that for purposes of determining the maximum adjusted rent, Carter's baseline maximum rent was $890 per month, that is, the rent she had paid Whitford before Cohen took over the property.

At trial, the jury heard testimony from Carter and Cohen. Carter testified as follows: She was unaware that the guesthouse was not registered under the RSO until 2004, when Cohen bought the property and proposed to increase her monthly rent from $890 to $1,475. In response to the proposal, Carter contacted the Los Angeles Housing Department, and discovered that the guesthouse was not registered under the RSO. Carter agreed to the rent increase and signed a new lease agreement with Cohen. In 2005, while talking to Whitford, Carter learned that the guesthouse had been constructed without building permits and was, according to Whitford, "not permitted, not legal." In or around September 2005, when Cohen proposed to increase Carter's monthly rent to $1,585 upon renewing her lease, Carter filed an online complaint with the Los Angeles Housing Department. She decided not to pursue the complaint due to fear of retaliation, and agreed to the rent increase. A year later, after Cohen sought to increase her monthly rent to $1,685, she notified him of her intention to vacate the guesthouse.

Cohen testified that when he bought the property in 2004, he knew that the guesthouse had been built without permits and that it did not comply with the building code. According to Cohen, Whitford told him the guesthouse had been built "at a time before codes" and was "grandfathered in" for purposes of the building code. Cohen did nothing to make the guesthouse "legal," and decided to continue renting it to Carter. During Carter's tenancy, he never tried to register the guesthouse under the RSO because he was unaware of any obligation to do so. In November 2006, the Los Angeles Department of Building and Safety ordered him to halt the occupation of the guesthouse because it lacked a certificate of occupancy.

Susan Gosden, an employee working in the Rent Stabilization Division of the Los Angeles Housing Department, testified regarding the rent increases permitted under the RSO from 2004 to 2006. According to Gosden, the guesthouse had never been registered under the RSO. She also opined that the City of Los Angeles would not have allowed a landlord to register the guesthouse because it had been built without the requisite permits.

Following the presentation of evidence, the jury was directed to determine the amount by which Carter's rent payments exceeded the RSO limits. The jury found this amount to be $11,590.

### 3. Analysis

The key issue before us is whether the trial court erred in concluding that Cohen was subject to the RSO's prohibition against the collection of excessive rent. At the outset, we note the narrow scope of our inquiry. Although the trial court made several rulings adverse to Carter regarding her RSO claims, she never noticed an appeal and does not challenge those rulings on appeal. We therefore do not address the rulings, including the determinations that Carter could not recover her rent payments in their entirety and that she was not entitled to trebled damages as a penalty. Our inquiry is limited to whether Carter was entitled to recover her excess rent payments, even though the guesthouse lacked a certificate of occupancy and was not registered under the RSO.

■ To the extent our examination requires us to interpret the RSO and other provisions of the Los Angeles Municipal Code, we follow established principles. Generally, local ordinances are construed in light of the canons of statutory construction. (*City of San Diego v. Rider* (1996) 47 Cal.App.4th 1473, 1490 [55 Cal.Rptr.2d 422].) "[W]e begin with the fundamental rule that a court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. In determining such intent, the court turns first to the words themselves for the answer. We are required to give effect to statutes according to the usual, ordinary import of the language employed in framing them. Moreover, the various parts of a statutory enactment must be harmonized by considering the particular clause or section in the context of the statutory framework as a whole. [Citation.]" (*Rodriguez v. Solis* (1991) 1 Cal.App.4th 495, 505 [2 Cal.Rptr.2d 50].)[4]

■ Under these principles, the RSO, by its plain language, authorized Carter's recovery of her excess rent payments. As noted above (see pt. A.1., *ante*), section 151.04, subdivision A states that "[i]t shall be unlawful for any landlord to demand, accept or retain more than the maximum adjusted rent permitted" under the RSO; in addition, section 151.05, subdivision A bars a landlord from "demand[ing] or accept[ing] rent for a rental unit" in the absence of a "valid registration or annual registration renewal statement."

---

[4] We independently review the trial court's interpretation of the RSO and other determinations of law (see *Home Depot, U.S.A., Inc. v. Contractors' State License Bd.* (1996) 41 Cal.App.4th 1592, 1599 [49 Cal.Rptr.2d 302]), and otherwise examine the record for substantial evidence to support the factual findings relevant to the trial court's ruling (see *Nordquist v. McGraw-Hill Broadcasting Co.* (1995) 32 Cal.App.4th 555, 561 [38 Cal.Rptr.2d 221]).

Under the RSO, the term "rental unit" includes "[a]ll dwelling units," as specified in section 12.03, unless the unit falls within an enumerated exception. (§ 151.02.) In turn, section 12.03 states that a "dwelling unit" is "[a] group of two or more rooms, one of which is a kitchen, designed for occupancy by one family for living and sleeping purposes." ■ Here, the evidence at trial established that the unregistered guesthouse was a dwelling unit, so defined; moreover, Cohen has not identified any express exception to the RSO's definition of "rental unit" that encompasses the guesthouse, and we do not discern any such exception.[5] Under these circumstances, Cohen was prohibited from obtaining rent in excess of the RSO limit. Accordingly, Cohen improperly "demand[ed] . . . payment of rent in excess of the maximum rent or maximum adjusted rent," within the meaning of the penalty provision of the RSO (§ 151.10, subd. A).

Cohen contends that the trial court erred in permitting Carter to recover her excess rent payments, as this had the effect of enforcing an unlawful rental agreement. He argues that the rental agreement was void and unenforceable because the guesthouse had been built without permits, lacked a certificate of occupancy, and was unregistered under the RSO. For the reasons discussed below, these facts did not preclude Carter's recovery under the RSO.

Rental agreements involving units that were constructed without building permits or lack a certificate of occupancy are ordinarily regarded as unlawful and void. (*Espinoza v. Calva* (2008) 169 Cal.App.4th 1393, 1400 [87 Cal.Rptr.3d 492]; *Salazar v. Maradeaga* (1992) 10 Cal.App.4th Supp. 1, 4 [12 Cal.Rptr.2d 676] (*Salazar*).) This is because "[t]he object of a contract must be lawful [citation]; i.e., it must not be in conflict either with express statutes or public policy. . . . [Accordingly, i]f the contract has a single object, and that object is unlawful (whether in whole or in part), the entire contract is void." (1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 420, p. 461, citation omitted.)

Generally, "the courts . . . will not enforce an illegal bargain or lend their assistance to a party who seeks compensation for an illegal act." (*Lewis & Queen v. N. M. Ball Sons* (1957) 48 Cal.2d 141, 150 [308 P.2d 713] (*Lewis & Queen*).) Our Supreme Court has explained: "The reason for this refusal is not that the courts are unaware of possible injustice between the parties, and that the defendant may be left in possession of some benefit he should in good conscience turn over to the plaintiff, but that this consideration is outweighed by the importance of deterring illegal conduct. Knowing that they will receive no help from the courts and must trust completely to each other's good faith,

---

[5] The definition of "rental unit" expressly exempts "[d]wellings, one family, except where two or more dwelling units are located on the same lot." (§ 151.02.) The guesthouse falls outside this exception because it shared a lot with a house.

the parties are less likely to enter an illegal arrangement in the first place. [Citations.]" (*Id.* at pp. 150–151.)

▮ Nonetheless, the rule barring the enforcement of unlawful contracts is not absolute. Because the rationale for the rule is founded on deterrence, the Supreme Court has made clear that courts " 'should not . . . blindly extend the rule to every case where illegality appears somewhere in the transaction. The fundamental purpose of the rule must always be kept in mind, and the realities of the situation must be considered. Where, by applying the rule, the public cannot be protected because the transaction has been completed, where no serious moral turpitude is involved, where the defendant is the one guilty of the greatest moral fault, and where to apply the rule will be to permit the defendant to be unjustly enriched at the expense of the plaintiff, the rule should not be applied.' " (*Tri-Q, Inc. v. Sta-Hi Corp.* (1965) 63 Cal.2d 199, 218–219 [45 Cal.Rptr. 878, 404 P.2d 486] (*Tri-Q*), quoting *Norwood v. Judd* (1949) 93 Cal.App.2d 276, 288–289 [209 P.2d 24].)

One type of situation in which the rule is inapplicable is described in *Lewis & Queen*: "[W]hen the Legislature enacts a statute forbidding certain conduct for the purpose of protecting one class of persons from the activities of another, a member of the protected class may maintain an action notwithstanding the fact that he has shared in the illegal transaction. The protective purpose of the legislation is realized by allowing the plaintiff to maintain his action against a defendant within the class primarily to be deterred. In this situation it is said that the plaintiff is not in pari delicto. [Citations.]" (*Lewis & Queen, supra*, 48 Cal.2d at p. 153, italics omitted.) Courts have thus permitted parties to obtain benefits under a law enacted for their protection, despite their participation in transactions that contravened the law (*Page v. Bakersfield Uniform etc. Co.* (1966) 239 Cal.App.2d 762, 770 [49 Cal.Rptr. 46] [defense of unclean hands cannot be used to defeat claim under unfair competition law (Bus. & Prof. Code, § 17200 et seq.)]). Similarly, courts have permitted parties to enforce contracts that contravene statutes enacted for the parties' benefit (*Yuba Cypress Housing Partners, Ltd. v. Area Developers* (2002) 98 Cal.App.4th 1077, 1082–1083 [120 Cal.Rptr.2d 273] [home purchaser was entitled to enforce attorney fee provision of sales agreement void under statute intended to protect home buyers]).

▮ In our view, the principles enunciated by our Supreme Court in *Tri-Q* and *Lewis & Queen* encompass Carter's claim for excess rent payments under the RSO. As noted above (see pt. A.1., *ante*), the RSO was enacted to "safeguard tenants from excessive rent increases" (§ 151.01). Although rental agreements regarding units lacking a certificate of occupancy are unlawful, their enforcement by tenants is subject to the principles that we have explained. (See *Espinoza v. Calva, supra*, 169 Cal.App.4th at p. 1400.) Here,

Carter sought no benefits under the provisions of her lease agreements with Cohen: she relied on the agreements solely to establish that the rent she had paid exceeded the RSO limits. Because "[t]he protective purpose of the legislation [was] realized by allowing [Carter] to maintain [her] action against [her landlord]" (*Lewis & Queen, supra*, 48 Cal.2d at p. 153), the trial court properly permitted her to assert her RSO claim.

Cohen's reliance on the decision of the appellate department of the superior court in *Salazar* is misplaced. That case addressed a provision of the RSO permitting a landlord to evict a tenant in order to comply with an order directing the landlord to vacate the rental unit due to a code violation, but obligating the landlord to pay the tenant certain relocation fees. The appellate department determined that although the rental agreement at issue was unlawful, the goals of the RSO would be promoted by denying the landlord possession of the unit until he paid the tenant a relocation fee under the RSO. (*Salazar, supra*, 10 Cal.App.4th at pp. Supp. 4–6.) In a footnote, the appellate department remarked: "[W]hether the tenant is liable for rent [while he or she remains in possession], is not directly raised in this appeal. However, we note that the RSO recognizes that the tenant is not at fault under the circumstances encountered here and provides that the landlord-tenant relationship shall continue until relocation benefits are paid. This relationship gives rise to an obligation to pay the reasonable value of the use and occupancy of the premises . . . , even if the lease agreement is considered void because it contemplates an illegal use of the property." (*Salazar, supra*, at pp. Supp. 6–7, fn. 5.)

■ Cohen argues that *Salazar* establishes his entitlement to "the reasonable value" of the guesthouse while Carter was its tenant (*Salazar, supra*, 10 Cal.App.4th at p. Supp. 4, fn. 5), notwithstanding the RSO limits on rent. We disagree. Initially, we note that published decisions of the appellate department are not binding on this court. (*Worthington v. Unemployment Ins. Appeals Bd.* (1976) 64 Cal.App.3d 384, 389 [134 Cal.Rptr. 507].) Moreover, as the *Salazar* court recognized, the issue on which it opined in the footnote was neither raised nor decided in the appeal. Finally, the footnote's discussion fails to apply the principles set forth by our Supreme Court in *Lewis & Queen* and other cases. Under the circumstances present here, permitting a landlord to recover the reasonable value of the rental unit would strip away the protection created for the tenant by the RSO. We thus find the *Salazar* dicta unpersuasive.

Cohen contends that Carter may not seek relief under the RSO because she knew during her tenancy that the guesthouse was unlawful. At trial, the sole source of evidence regarding Carter's awareness of the guesthouse's unpermitted status was Carter herself. She testified that she first learned the

guesthouse was not registered under the RSO in September 2004, when she signed her first lease agreement with Cohen, and that she discovered the reason for the lack of registration in 2005, when Whitford told her the guesthouse was "not permitted, not legal." Cohen maintains that Carter's knowledge of the guesthouse's status nullified her entitlement to relief. We disagree.

When the *Lewis & Queen* exception is applicable, a plaintiff's awareness that he or she may be participating in improper conduct does not bar relief under a statute if raising such a barrier would defeat the aim of the statute. In *Mendoza v. Ruesga* (2008) 169 Cal.App.4th 270, 274 [86 Cal.Rptr.3d 610], several undocumented aliens sought assistance from an immigration consultant, who promised that he could help them obtain amnesty, despite their manifest lack of qualification for this status. On behalf of the aliens, the consultant submitted documents containing statements that the aliens knew, or appeared to know, were false. (*Id.* at pp. 277–278.) After the aliens asserted claims against the consultant under the Immigration Consultants Act (ICA) (Bus. & Prof. Code, § 22440 et seq.), a jury found that the aliens were not entitled to relief due to unclean hands. (*Mendoza v. Ruesga*, at p. 278.) In reversing the judgment, the appellate court applied the *Lewis & Queen* exception and determined that the denial of relief would frustrate the public policy underlying the ICA, which was enacted to protect immigrants. (*Mendoza v. Ruesga*, at pp. 280–281.)

 We reach the same conclusion here. Generally, landlords cannot circumvent their obligations under the RSO through the tenant's acquiescence or agreement. (*Gombiner v. Swartz* (2008) 167 Cal.App.4th 1365, 1372 [85 Cal.Rptr.3d 83].) Carter's knowledge of the unlawful status of her rental unit arose only after she had lived in the guesthouse for over two years and had already entered into the agreement with Cohen. To deny Carter relief under these circumstances would effectively shift landlords' burdens under the RSO to tenants, as it would force tenants who learned that their rental units were unlawful to terminate their leases voluntarily in order to avoid excessive rent.

Cohen also contends that the RSO, by its own terms, does not subject landlords who rent dwelling units lacking a certificate of occupancy to the prohibition against collecting excess rent. As noted above, the definition of "rental unit" under the RSO is qualified by several express exceptions, one of which is for "[h]ousing accommodations located in a structure for which a certificate of occupancy was first issued after October 1, 1978."[6] (§ 151.02.) Cohen does not suggest that this exception encompasses the guesthouse,

---

[6] The exception further provides: "This exception shall not apply to individual mobilehome coaches, mobilehome parks, individual recreational vehicles or recreational vehicle parks." (§ 151.02.)

which lacks a certificate of occupancy and whose construction predated "codes," according to Cohen's testimony at trial. Rather, Cohen maintains that as a matter of statutory interpretation, the exception establishes that no dwelling unit constitutes a "rental unit" under the RSO unless it has a certificate of occupancy. He thus argues that because his guesthouse fell outside the scope of the RSO, he was not subject to the RSO's prohibition against the collection of excess rent. He is mistaken.

The exception upon which Cohen relies does not establish that "rental units" within the scope of the RSO must have a certificate of occupancy. "Exceptions to the general rule of a statute are to be strictly construed and, in interpreting exceptions to the general statute, courts include only those circumstances which are within the words and reason of the exception. [Citation.]" (*Hayter Trucking, Inc. v. Shell Western E&P, Inc.* (1993) 18 Cal.App.4th 1, 20 [22 Cal.Rptr.2d 229].) As the court explained in *City of Los Angeles v. Los Olivos Mobile Home Park* (1989) 213 Cal.App.3d 1427, 1438 [262 Cal.Rptr. 446], "the obvious purpose" of the exception in question here is "to encourage the construction of new rental units in order to expand the City's stock of affordable housing." To construe the exception as generally exempting dwelling units lacking certificates of occupancy from the RSO would promote the collection of rent for occupancy of such units, even though section 12.26, subdivision E.1 provides that "*no* building . . . shall be occupied or used" (italics added) in the absence of a certificate of occupancy. We decline to interpret the exception in a manner that injects fundamental disharmony into the Los Angeles Municipal Code.

In a related contention, Cohen argues that the RSO does not subject landlords who rent dwelling units lacking a certificate of occupancy to the prohibition against collecting excess rent because the RSO contains no express provision to this effect. He notes that the sole express reference in the RSO to such units is found in section 151.09, which obliges landlords to pay relocation fees to tenants evicted from units violating building and zoning ordinances. However, as explained above, the broad language of the RSO definition of "rental unit" encompasses dwelling units, such as the guesthouse, that lack a certificate of occupancy. Accordingly, an express provision imposing the prohibition in question is unnecessary.[7]

---

[7] Cohen suggests that if the term "rental unit" applies to a dwelling unit lacking a certificate of occupancy, the relocation fee provision of the RSO (§ 151.09) is surplusage. He is mistaken. For the reasons we have discussed, the RSO provision related to the collection of rent (§ 151.04, subd. A) bars a landlord from collecting rent in excess of the RSO limits for a dwelling unit lacking a certificate of occupancy. The relocation fee provision imposes an *additional* obligation on the landlord: when the unit is subject to an order to vacate, the landlord must pay a relocation fee.

Cohen also suggests that the RSO does not apply to unlawful rental agreements because the term "maximum rent" is defined in terms of the "highest legal monthly rate" or "the rent

Cohen maintains that the Los Angeles Housing Department has construed the RSO to exempt landlords who rent unpermitted dwelling units from the prohibition regarding excessive rent. At trial, Gosden, the employee of the department's rent stabilization division, testified that the city does not allow owners of units constructed without building permits to register the units under the RSO. Cohen argues that this testimony supports his contention that he was not subject to the RSO's prohibition against the collection of excessive rent. We disagree. Gosden's testimony shows only that the department enforces the RSO with due attention to other provisions of the Los Angeles Municipal Code, including section 12.26, subdivision E.1, which bars the occupation or use of buildings lacking a certificate of occupancy. As allowing landlords to register such units would encourage them to collect rent, even though the units may not be occupied or used, the department does not register such units. Nothing in Gosden's testimony suggests that Cohen was exempt from the RSO's prohibition against the collection of rent in excess of the RSO limit. In sum, the trial court did not err in permitting Carter to assert her RSO claim.

B. *Fee Award*

 Cohen contends that the trial court erred in permitting Carter to recover her attorney fees under the penalty provisions of the RSO because her recovery of $11,590 in damages was less than required for an unlimited civil action. Under Code of Civil Procedure section 1033, if a plaintiff brings an unlimited civil action and recovers a judgment within the $25,000 jurisdictional limit for a limited civil action, the trial court has the discretion to deny costs to the plaintiff. (*Steele v. Jensen Instrument Co.* (1997) 59 Cal.App.4th 326, 330 [69 Cal.Rptr.2d 135].) "In determining whether the prevailing party recovered a judgment that could have been rendered in a court of lesser jurisdiction, the trial court does not add a potential award of statutory or contractual attorney's fees. [Citation.]" (*Id.* at p. 331.)

---

legally in effect" during a period (§ 151.02). As noted above, the RSO sets a maximum adjusted rent determined by a baseline "maximum rent" and a permissible adjustment (§§ 151.02, 151.06). For periods after the effective date of the RSO, the term "maximum rent" is defined as "the rent legally in effect at the time the rental unit was or is first re-rented." (§ 151.02.) Here, the trial court found that the baseline maximum rent was $890 per month, namely, the rent Carter paid to Whitford.

Cohen argues that because the RSO defines "maximum rent" in terms of "legal" rent, the RSO does not bar landlords from collecting rent arising from unlawful agreements of the sort present here. However, when, as here, there was no "legal" rent, the *sole* implication of the RSO's definition of "maximum rent" appears to be that the baseline maximum rent is $0, for purposes of determining the "maximum adjusted rent." Cohen's argument thus suggests that his liability for excessive rent payments was potentially greater than the trial court determined it to be. Nonetheless, as Carter has not challenged the trial court's ruling regarding the amount of the maximum rent, we conclude only that nothing in the definition of "maximum rent" exempted Cohen from the RSO's prohibition regarding the collection of excess rent.

Here, Carter requested a total of $43,025 in fees. Cohen opposed her request on several grounds, including Code of Civil Procedure section 1033. In awarding Carter $25,575, the trial court did not explain why it declined to deny her a fee award under the provision. Under such circumstances, we will affirm the award on any basis properly supported by the record. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32 [51 Cal.Rptr.2d 444, 913 P.2d 473].)

 We see no error in the ruling. As the court explained in *Valentino v. Elliott Sav-On Gas, Inc.* (1998) 201 Cal.App.3d 692, 701–703 [247 Cal.Rptr. 483], the purpose of Code of Civil Procedure section 1033 (formerly § 1032, subd. (d)) is "to discourage plaintiffs from 'over filing' their cases" and thereby "wast[ing] judicial resources." Accordingly, the trial court may properly award costs to a plaintiff who recovers less than the jurisdictional amount for an unlimited civil case when he or she reasonably and in good faith initiated the action believing that the ultimate recovery would exceed the jurisdictional limit. (201 Cal.App.3d at pp. 701–703.)

Here, Carter initially alleged RSO claims for all the rent she had paid to Cohen, as well as for trebled damages under the penalty provisions of the RSO. Nothing in the record establishes that Carter acted unreasonably or in bad faith in asserting the claims. Although the trial court limited her recovery to her excess rent, as determined by a baseline "maximum rent" of $890 per month, and denied her trebled damages, it recognized that her claims raised issues of first impression. Accordingly, the trial court did not err in issuing the fee award.

## C. *Attorney Fees on Appeal*

 Carter seeks an award of her attorney fees on appeal under section 151.10, subdivision A, which authorizes fee awards in actions against landlords who demand rent in excess of the RSO limits. Generally, " '[s]tatutory authorization for the recovery of attorney fees incurred at trial necessarily includes attorney fees incurred on appeal unless the statute specifically provides otherwise. [Citation.]' " (*Kirby v. Sega of America, Inc.* (2006) 144 Cal.App.4th 47, 62 [50 Cal.Rptr.3d 607] (*Kirby*), quoting *Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134 [94 Cal.Rptr.2d 448].) Fee-shifting provisions in municipal ordinances ordinarily have the force and effect of such provisions in statutes. (*City of Monte Sereno v. Padgett* (2007) 149 Cal.App.4th 1530, 1535 [58 Cal.Rptr.3d 218].) As section 151.10, subdivision A contains no exclusion of fees incurred on appeal, we conclude that Carter is entitled to the award she requests, and remand the matter to the trial court for a determination of the appropriate amount of fees. (See *Kirby, supra,* at pp. 62–63.)

## DISPOSITION

The judgment is affirmed. The matter is remanded to the trial court solely for a determination of the amount of attorney fees to be awarded Carter as the prevailing party on appeal (§ 151.10, subd. A). Carter is awarded her costs on appeal.

Epstein, P. J., and Willhite, J., concurred.