[No. B239347. Second Dist., Div. Five. Feb. 14, 2013.]

ABCO, LLC, Plaintiff and Appellant, v.
FRED EVERSLEY, Defendant and Respondent.

────────────────────────────────────────

COUNSEL

Craig Mordoh for Plaintiff and Appellant.

Law Offices of Daniel J. Bramzon & Associates, Benjamin G. Ramm and Daniel J. Bramzon for Defendant and Respondent.

────────────────────────────────────────

OPINION

## TURNER, P. J.—

### I. INTRODUCTION

Plaintiff, ABCO, LLC, appeals from a summary judgment entered in favor of defendant, Fred Eversley, on an unlawful detainer complaint. The unlawful detainer complaint was filed after defendant, a tenant, refused to pay rental increases for premises located on Abbot Kinney Boulevard in the City of Los Angeles (the city). Defendant argued plaintiff's rental increases violated the Rent Stabilization Ordinance of the City of Los Angeles (L.A. Mun. Code, § 151.00 et seq.)[1] (the ordinance) and no exemption for one-family dwellings applied. The trial court ruled plaintiff violated section 151.04, subdivision A by raising defendant's rent in excess of section 151.07, subdivision A.6. The trial court rejected plaintiff's contention that the Abbot Kinney Boulevard property was exempt from the ordinance because it was a one-family dwelling within the meaning of section 12.03. We affirm.

### II. FACTUAL AND PROCEDURAL HISTORY

On May 27, 2011, plaintiff filed an unlawful detainer complaint against defendant for five largely unpaid monthly rental installments due at $9,900

────────────────────────────────────────

[1] All further references to sections are to the Los Angeles Municipal Code unless otherwise indicated.

per month. The notice to pay rent or quit dated May 9, 2011, sought rent from January 1 through May 1, 2011. The three-day notice to pay rent or quit indicates defendant paid $20,000 to plaintiff in March 2011. Defendant filed a general denial which included 23 affirmative defenses. The 23d affirmative defense alleges the property is not registered with the Los Angeles Housing Department and the rent increase exceeded that permissible by law. (§§ 151.05, 151.09, subds. E–F, 151.11.)

In support of the summary judgment motion, defendant's declaration established the following. Defendant has lived at 1100 Abbot Kinney Boulevard in Los Angeles since 1969. The property had previously been listed on the city records with an address of 1110 Washington Boulevard. The occupancy certificate, dated March 27, 1969, describes the property as a "Dwelling & Store." Until the middle of 2011, according to defendant, other people lived in other portions of the building which were separate units. Although each unit used a separate mailing address, all of the apartments were part of the same building. The other units were separated by wood and plaster walls. The units were not detached from defendant's apartment. There were between eight and 10 people living in the building at various times. The building owner saw the other persons and rented the building as dwellings. The apartments used addresses of 1112, 1114 and 1116 Abbot Kenny or Washington Boulevards. For years, there had been only one water meter and defendant paid half of the water bill.

Defendant has always used the property as a workspace and residence. In one portion of the property he rented, defendant ate, slept and bathed. When he moved into the property, it contained a bedroom, a bathroom with shower and tub and a full kitchen. The kitchen included a stove, refrigerator, sink and wall of countertops and cabinets. In the past 40 years, defendant replaced the appliances and installed a new sink. In the other portion of the property he rented, defendant worked as a sculptor. The workspace made up between 40 and 45 percent of the part of the building defendant rented. Defendant attached a photograph of the living area to his declaration. The work area and the residence were all in the building.

Defendant had entered into several long-term leases with plaintiff. The first lease, dated March 10, 1976, described the premises as, "Art Studio and Gallery and Place of Residence." When the lease was renewed on February 15, 1986, the description of the premises was the same. When the lease was renewed on August 19, 1987, it stated that, apart from the term of the

agreement and the rent, all of the other causes and conditions of the original release were to remain unchanged. In August, 2006, the lease was extended "under the same terms and conditions" for a new term and specified rental increases.

When the lease term ended on August 31, 2007, defendant was paying $4,800 per month in rent. In the first year of the extension, defendant's rent was increased to $9,000 per month. The first extension lasted from September 1, 2007, to August 31, 2008. Then, defendant's rent was increased to $9,900 per month. Defendant had never registered plaintiff's unit with the housing department.

Plaintiff filed the declaration of H. William Hall in opposition to defendant's summary judgment motion. In part, Mr. Hall's declaration is contradictory. At one point he states, "At all times [the] building was used [as] a commercial building for business purposes only." Then in the next sentence, Mr. Hall declares that defendant obtained an occupancy permit. The purpose of the occupancy permit was to allow defendant to use the premises as both a business and residence. According to Mr. Hall, the occupancy permit only affected defendant's premises and no other portion of the building. Mr. Hall declared none of the other units have been used as residences; no permits have been issued to install kitchens or bedrooms in any other unit other than the one belonging to defendant; and he is aware that there is running water in all of the units. Mr. Hall had inquired of an unidentified housing department staffer as to whether the building at issue fell under its jurisdiction. According to Mr. Hall, he was told that a "multi-unit commercial building with only one dwelling" does not fall under the ordinance. In addition, Mr. Hall declared: "I was also advised that if an occupant thought his unit falls under [the ordinance] he could file a Complaint and an official investigation would take place. No Complaint has been filed and no investigation has occurred."

On October 11, 2011, defendant's summary judgment motion was granted. On October 11, 2011, the trial court issued a written ruling. The written ruling states section 12.03 defines a "dwelling unit" as a suite of two or more rooms which are occupied by a family for living and sleeping purposes. Further, the trial court concluded that section 151.05, subdivision A.1 requires a rental unit be registered with the housing department. The trial court rejected plaintiff's argument that defendant's rental unit was a single-family dwelling as that term is used in section 12.03. The trial court reasoned defendant's residence was not a detached dwelling containing only a single-family dwelling unit. In its October 18, 2011 written order granting's defendant's summary judgment motion, the trial court ruled his residence was not a

single-family dwelling. In addition, the trial court ruled the rent increases exceeded that permitted by the ordinance. Judgment was entered on October 18, 2011. The notice of appeal was filed on February 22, 2012.

## III. DISCUSSION

### A. The Timeliness of the Appeal

Defendant moved to dismiss plaintiff's appeal. Defendant argued the notice of appeal was filed more than 60 days after the notice of entry of judgment was served. Plaintiff denied ever receiving a notice of entry of judgment. In response to defendant's dismissal motion, we referred the matter to the trial court for a determination regarding the timeliness of the appeal. We directed that the trial court act as a referee to determine whether a notice of entry of judgment had been served on plaintiff. (See *Ebensteiner Co., Inc. v. Chadmar Group* (2006) 143 Cal.App.4th 1174, 1178 [49 Cal.Rptr.3d 825]; *Glasser v. Glasser* (1998) 64 Cal.App.4th 1004, 1008–1009 [75 Cal.Rptr.2d 621].) The trial court ruled that neither the clerk nor defendant ever served plaintiff with a notice of entry of judgment. (Cal. Rules of Court, rule 8.104(a)(1)(A)–(B); *Moghaddam v. Bone* (2006) 142 Cal.App.4th 283, 288 [47 Cal.Rptr.3d 602].) We accept the referee's findings. Accordingly, the February 22, 2012 notice of appeal is timely because it was filed within 180 days after judgment was entered on October 18, 2011. (Cal. Rules of Court, rule 8.104(a)(1)(C); *Johnson v. Ralphs Grocery Co.* (2012) 204 Cal.App.4th 1097, 1102, fn. 5 [139 Cal.Rptr.3d 396]; *Cochran v. Linn* (1984) 159 Cal.App.3d 245, 249 [205 Cal.Rptr. 550].) Therefore, the dismissal motion is denied.

### B. Summary Judgment Standard of Review

In *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851 [107 Cal.Rptr.2d 841, 24 P.3d 493], our Supreme Court described a party's burdens on summary judgment motions as follows: "[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon. [Citation.] There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof. . . . [¶] . . . [T]he party moving for summary judgment

bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]" (Fns. omitted; see *Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878 [116 Cal.Rptr.2d 158].) We review the trial court's decision to grant the summary judgment motion de novo. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336 [113 Cal.Rptr.3d 279, 235 P.3d 947]; *Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65, 67–68 [99 Cal.Rptr.2d 316, 5 P.3d 874].) The trial court's stated reasons for granting summary judgment are not binding on us because we review its ruling not its rationale. (*Coral Construction, Inc. v. City and County of San Francisco, supra*, 50 Cal.4th at p. 336; *Continental Ins. Co. v. Columbus Line, Inc.* (2003) 107 Cal.App.4th 1190, 1196 [133 Cal.Rptr.2d 199].) In addition, a summary judgment motion is directed to the issues framed by the pleadings. (*Turner v. Anheuser-Busch, Inc.* (1994) 7 Cal.4th 1238, 1252 [32 Cal.Rptr.2d 223, 876 P.2d 1022]; *Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673 [25 Cal.Rptr.2d 137, 863 P.2d 207], overruled on a different point in *Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 527 [113 Cal.Rptr.3d 327, 235 P.3d 988].) Those are the only issues a motion for summary judgment must address. (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1249–1250 [91 Cal.Rptr.3d 532, 203 P.3d 1127]; *Goehring v. Chapman University* (2004) 121 Cal.App.4th 353, 364 [17 Cal.Rptr.3d 39].)

### C. There Are No Triable Issues of Material Fact

Plaintiff contends the trial court erroneously found the premises were subject to the ordinance. Rather, according to plaintiff, the trial court should have found that an exemption for "[d]wellings, one family" under section 151.02 applied. We disagree.

■ Our case concerns written leases. Hence, we refer to lessors while discussing the pertinent law. Section 151.05, subdivision A.5 prohibits a lessor from demanding or accepting rent "for a rental unit" unless it secures a registration statement from the housing department. In addition, no lessor may demand or accept rent for a rental unit unless the registration statement has been served on the tenant or posted in a conspicuous place. The failure to register a rental unit is a defense to an unlawful detainer action. (§ 151.09, subd. F.) Further, section 151.05, subdivision A prohibits charging more than maximum adjusted rent as calculated under the ordinance. The maximum rent increase that may be assessed is eight percent annually. (§ 151.07, subd. A.6.)

A tenant may refuse to pay rent greater than that allowable under the ordinance. (§ 151.11, subd. A; *Carter v. Cohen* (2010) 188 Cal.App.4th 1038, 1044 [116 Cal.Rptr.3d 303].)

The term "rental unit" is defined in section 151.02: "All dwelling units . . . and suites, as defined in Section 12.03 of this Code, and all housing accommodations as defined in Government Code Section 12927 . . . rented or offered for rent for living or dwelling purposes, the land and buildings appurtenant thereto, and . . . facilities supplied in connection with the use or occupancy thereof, including garage and parking facilities. . . . The term shall not include: [¶] 1. Dwellings, one family, except where two or more dwelling units are located on the same lot. This exception shall not apply to duplexes or condominiums." It is this exemption for "Dwellings, one family" that is at issue.

Section 12.03 provides a series of definitions for dwellings. Dwelling is defined as "Any residential building, other than an Apartment House, Hotel or Apartment Hotel." "Dwelling unit" is defined as "A group of two or more rooms, one of which is a kitchen, designed for occupancy by one family for living and sleeping purposes." The term "dwelling, one family" is defined in section 12.03 as "A detached dwelling containing only one dwelling unit." But a "dwelling, one family" does not include duplexes or condominiums. (§ 12.03.) Finally section 12.03 defines "family" as, "One or more persons living together in a dwelling unit, with common access to, and common use of all living, kitchen, and eating areas within the dwelling unit."

## D. Application to the Present Case

Resolution of this case is largely an issue of interpretation of sections 12.03 and 151.02. The interpretation and legal effect of those sections is a pure question of law and the rules of construction applied to statutes apply equally to municipal ordinances. (*Carter v. Cohen, supra,* 188 Cal.App.4th at p. 1046; *TG Oceanside, L.P. v. City of Oceanside* (2007) 156 Cal.App.4th 1355, 1374 [68 Cal.Rptr.3d 320].) As in the case of statutes, we must determine the Los Angeles City Council's intent in enacting sections 12.03 and 151.02. (*Torres v. City of San Diego* (2007) 154 Cal.App.4th 214, 226 [64 Cal.Rptr.3d 495]; *County of Madera v. Superior Court* (1974) 39 Cal.App.3d 665, 668–669 [114 Cal.Rptr. 283].) When the ordinance's language is clear, there is no need to resort to extrinsic aids. (*Chaffee v. San Francisco Public Library Com.* (2005) 134 Cal.App.4th 109, 114 [36 Cal.Rptr.3d 1]; *Ocean Park Associates v. Santa Monica Rent Control Bd.* (2004) 114 Cal.App.4th 1050, 1064 [8 Cal.Rptr.3d 421].)

■ Plaintiff contends that its Abbot Kinney Boulevard property is not subject to the ordinance's requirements to register with the housing department and limitation on rent increases. We disagree. Section 151.05, subdivision A requires a lessor to register if it rents a "rental unit." The term "rental unit" is defined in section 151.02 as a "dwelling unit[]" rented for "living or dwelling" purposes. Section 151.02 extends the definition of a "rental unit" to "the land and buildings appurtenant" to the dwelling unit. Section 151.02 provides an exception to this broad definition of a rental unit for "Dwellings, one family, except where two or more dwelling units are located on the same lot." Section 12.03 defines "Dwelling, one-family" (some capitalization omitted) as "A detached dwelling containing only one dwelling unit." The express language of section 12.03 requires that a one-family dwelling be detached. There is no ambiguity in section 12.03. Section 12.03 expressly requires that a one-family dwelling be "detached."

■ The uncontroverted evidence demonstrates that defendant's unit is not detached. Rather, it is part of a larger building with multiple spaces where other units are rented. No doubt, there is a triable controversy as to whether other individuals lived in the building. Defendant's declaration states that other renters lived in the building. Mr. Hall's declaration states that no other tenants actually lived in the building. However, there is no triable issue as to whether defendant's unit is detached. Because section 12.03 requires a one-family dwelling to be *detached* and defendant's is not, his residence and workspace is a rental unit within the meaning of section 151.05, subdivision A.

There is no merit to plaintiff's contention that section 12.03 may not be used in applying section 151.02. As noted, section 12.03 imposes the requirement that a one-family dwelling be detached in order for the property to be exempt from the ordinance. Section 151.02 states: "The following words and phrases, whenever used in this chapter, shall be construed as defined in this section. Words and phrases not defined herein shall be construed as defined in sections 12.03 and 152.02 of this Code, if defined therein." Section 12.03 defines "Dwelling, one-family" (some capitalization omitted) and, as a result, that definition is applicable in defining a rental unit and the scope of the rent control ordinance.

Thus, there is no triable issue as to whether defendant's residence is subject to registration requirement and rental increase restrictions. Both defendant's and Mr. Hall's declarations agree plaintiff never registered the Abbot Kinney Boulevard property with the housing department. And there is no dispute the 9 percent rental increase exceeds that allowable under section 151.07, subdivision A.6. Thus, the trial court correctly ruled that defendant's residence is a rental unit subject to the restrictions on payment of rent and rental increases in the ordinance. Summary judgment was properly entered.

## IV. DISPOSITION

The judgment is affirmed. Defendant, Fred Eversley, is awarded his costs on appeal from plaintiff, ABCO, LLC.

Armstrong, J., and Kriegler, J., concurred.