Filed 10/31/14  Parks v. Hand CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| STEPHEN PARKS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>MICHAEL HAND et al.,<br><br>    Defendants and Respondents. | B251454<br><br>(Los Angeles County<br>Super. Ct. No. BC474289) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Barbara Ann Meiers, Judge.  Affirmed.

Kane Law Firm, Brad S. Kane, Samantha Cochran and Carolyn Valentine for Plaintiff and Appellant.

Law Offices of Goforth & Lucas and Christopher R. Lucas for Defendants and Respondents.

Plaintiff and appellant Stephen Parks sued his landlords, defendants and respondents Michael and Rita Hand, for violation of the Los Angeles Rent Stabilization Ordinance (L.A. Mun. Code, ch. XV, art. I., § 151.00 et seq.) (RSO). He sought to recover all rent paid to the defendants based on their failure to serve him with a copy of a "registration statement" as required by the RSO. The trial court granted its own motion for judgment on the pleadings on the ground that the rental unit was exempt from the RSO. Parks appealed from the resulting judgment. We affirm on the ground that the RSO does not provide for restitution when a landlord has failed to serve a tenant with a registration statement.

### FACTUAL AND PROCEDURAL BACKGROUND

In his complaint, the plaintiff alleged that he had been the tenant of a "detached dwelling unit" (Rental Unit) located on the defendants' property between March 2008 and November 2011. A certificate of occupancy for the Rental Unit had been issued in 2007 for a "Recreation Room/Storage Room."[1]

In August 2011, the City of Los Angeles notified the defendants that the Rental Unit was in violation of various provisions of the Los Angeles Municipal Code (LAMC) because (1) it was being "illegal[ly] occup[ied] . . . as a Dwelling," and (2) plumbing and electrical work was done without the required permits and approvals. The defendants were ordered to "discontinue the use" of the Rental Unit for "living, sleeping, cooking or dining purposes."

---

[1] Although this allegation was not originally in the complaint, the parties stipulated that "it was to be deemed for the purpose of the Motion [for judgment on the pleadings] that it appears in the Complaint."

2

According to the complaint, the plaintiff did not immediately vacate the Rental Unit. On November 29, 2011, he filed this action for reasons unrelated to the code violations. The complaint asserted a cause of action for violation of the RSO based on the defendants' failure to serve him with "a copy of a valid registration or annual registration renewal statement."[2] According to the complaint, "Defendants never registered the [Rental] Unit with the City of Los Angeles as required by [the RSO's] § 151.05(A). . . . Likewise, Defendants never served Parks with a copy of a valid registration or annual registration renewal statement as required by [] § 151.05(A). [¶] [] Since Defendants failed to: (i) register the [Rental] Unit and (ii) serve or display the written registration statement, Defendants were not permitted to 'demand or accept' any rent from Parks. . . . As a direct and proximate result of Defendants' failure to comply with [] § 151.05(A), Parks is entitled to the disgorgement of the $72,525.00 in rent he paid to Defendants."

On November 8, 2012, the plaintiff moved for summary adjudication of the defendants' ten affirmative defenses on the grounds that the defendants had failed to register the Rental Unit as required by the RSO, and therefore, were not entitled to collect any rent from the plaintiff. The defendants opposed the motion on the grounds that the Rental Unit was not subject to the RSO and, even if the RSO did apply, a tenant may only recover the amount of unauthorized increases to the base rent charged.

---

[2] The plaintiff also brought a cause of action based on the defendants' alleged failure to refund the plaintiff's entire security deposit. However, the plaintiff later dismissed this cause of action.

3

The trial court requested supplemental briefing on whether the Rental Unit fell within the RSO's exemption for properties for which a certificate of occupancy was issued after October 1, 1978. The court then denied the motion, apparently on the ground that the exemption applied.[3]

On August 6, 2013, "[a] [Code of Civil Procedure section] 438 Motion to grant a judgment on the pleadings was orally noticed by the Court for a forthwith hearing, and, with the concurr[e]nce of all, that hearing took place 'on the spot' . . . . [A] Judgment on the Pleadings was issued in the defendants' favor for the reasons stated in the Court's Order of 2/8/13 denying plaintiff[']s Motion for Summary Adjudication." Judgment was entered later that day, and the plaintiff timely appealed.

### CONTENTION

The plaintiff contends that the trial court erred in holding that the Rental Unit was exempt from the RSO. The plaintiff further contends that, pursuant to the RSO, he is entitled to restitution of all rent paid due to the defendants' failure to serve him with a registration statement.

### DISCUSSION

1.  *Standard of Review*

" 'A judgment on the pleadings is reviewed under the same standard by which a judgment following the sustaining of a demurrer is reviewed; the question is, assuming the truth of the pleadings, does the complaint state a cause of action.

---

[3]     The order is not included in the record on appeal, however, the parties appear to agree that the court denied the motion on this ground.

4

[Citation.]' [Citation.]" (*Treweek v. City of Napa* (2000) 85 Cal.App.4th 221, 223.) We independently determine whether the facts as alleged support a valid cause of action or, if they do not, whether amendment could cure the defect. (*Kempton v. City of Los Angeles* (2008) 165 Cal.App.4th 1344, 1347.)

2.    *The RSO*

The RSO was enacted in 1979 to control rent increases due to a housing shortage. (*Klarfeld v. Berg* (1981) 29 Cal.3d 893, 895-896.) It generally applies to "rental units" as defined within the code but exempts "[h]ousing accommodations[] located in a structure for which the first Certificate of Occupancy was issued after October 1, 1978 . . . ." (LAMC, § 151.02.)

Under the RSO, landlords are required to register "rental units" with the city's Housing and Community Investment Department and to serve of a copy of that registration or "annual registration renewal statement" on the tenant of the unit. (LAMC, § 151.05, subs. A (section 151.05 A.)) " . . . [N]o landlord shall demand or accept rent for a rental unit without first serving a copy of a valid registration or annual registration renewal statement on the tenant of that rental unit." (*Ibid.*)

If a landlord fails to serve the tenant with a copy of the registration document as required by section 151.05 A., "[a] tenant may withhold the payment of any rent otherwise lawfully due and owing . . . until such time as the landlord has complied with . . . Section 151.05 A . . . . " (LAMC, § 151.11, subs. B.) However, once the landlord complies with the service requirement, "the tenant becomes obligated to pay the current rent and any back rent withheld pursuant to this Subsection." (*Ibid.*)

5

The RSO also provides a remedy to tenants when a landlord increases the rent in violation of the RSO: "[a]ny person who demands, accepts or retains any payment of rent in excess of the maximum rent or maximum adjusted rent in violation of the provisions of this chapter, or any regulations or orders promulgated hereunder, shall be liable in a civil action to the person from whom such payment is demanded, accepted or retained for damages of three times the amount by which the payment or payments demanded, accepted or retained exceed the maximum rent or maximum adjusted rent which could be lawfully demanded, accepted or retained together with reasonable attorneys' fees and costs as determined by the court." (LAMC, § 151.10, subs. A.)

3. *The RSO Does Not Provide for Restitution of Rent When a Landlord Fails to Serve a Tenant With a Registration Statement*

Even if the Rental Unit is exempt from the RSO based on the 2007 certificate of occupancy, the RSO does not provide for the remedy sought by the plaintiff: the restitution of all rent paid to the defendants. The purpose of the RSO is to "safeguard tenants from excessive *rent increases*, while at the same time providing landlords with just and reasonable returns from their rental units." (LAMC, § 151.01 (emphasis added).) Accordingly, the RSO provides that a tenant who has been charged rent *in excess of* the rates allowed by the RSO may recover damages based on the amount of excess rent charged but does not provide for damages based on a landlord's failure to serve a registration statement. (LAMC, § 151.10, subs. A.) Here, the complaint does not allege that the defendants ever increased the rent charged. Furthermore, under the Costa-Hawkins Rental Housing Act, the defendants were entitled to "establish the initial

6

rental rate" for the Rental Unit, therefore, the plaintiff cannot claim that the initial rental rate exceeded the maximum rent that may be charged tenants. (Civil Code, § 1954.53, subd. (a).)

Furthermore, the plaintiff's attempts to interpret the RSO to provide for restitution of rent were squarely addressed and rejected by the Court of Appeal in *Lyles v. Sangadeo-Patel* (2014) 225 Cal.App.4th 759 (*Lyles*). In *Lyles,* a tenant also sued her landlords seeking restitution of all rent paid based on the landlords' failure to serve her with the registration statement as required by the RSO. (*Id.* at p. 762.)

Similar to the *Lyles* plaintiff, the plaintiff here argues that because section 151.05 A. provides that a landlord may not demand or accept rent without first serving the tenant with the registration statement, that means that a tenant who has not been so served is entitled to restitution of rent. However, the *Lyles* court held that "[t]he language in [] section 151.05, subsection A. that a landlord may not 'demand or accept rent for a rental unit without first serving a copy of a valid [rental unit] registration or annual [rental unit] registration renewal statement on the tenant of that rental unit' does not concern a landlord's entitlement to rent. It does not disentitle a landlord to rent for a period during which the landlord is not in compliance with [] section 151.05, subsection A. Instead, it concerns the timing of a landlord's 'demand' or 'acceptance' of rent to which the landlord remains entitled." (*Id.* at p. 766.)

The plaintiff also cites to *Carter v. Cohen* (2010) 188 Cal.App.4th 1038 (*Carter*) as support for his theory that a landlord's failure to comply with section 151.05 A. entitles a tenant to restitution. In *Carter*, the landlord did not register the subject rental

7

unit as required by the RSO, and then raised the tenant's rent in contravention of the RSO. (*Id.* at p. 1042.) The tenant sued to recover the rent she had paid in excess of the limits set by the RSO.[4] (*Ibid.*)

The *Carter* landlord argued that because the RSO defines the "maximum rent" a landlord may charge in terms of "legal" rent, the RSO does not set a ceiling on the amount of rent a landlord may charge arising from an *unlawful* agreement. The *Carter* court responded that "when, as here, there was no 'legal' rent, the *sole* implication of the RSO's definition of 'maximum rent' appears to be that the baseline maximum rent is $0.00, for purposes of determining the 'maximum adjusted rent.' " (*Id.* at p. 1051, fn. 7.)

The plaintiff interprets this statement as authorizing a tenant to a refund of rent when a landlord has charged any amount of rent without first serving the registration statement. The *Lyles* court rejected this argument: "The Court of Appeal in *Carter* did not consider whether a tenant may recover any or all of the rent paid for a period during which the tenant's landlord was not in compliance with [] section 151.05, subsection A. due to the landlord's failure to serve the tenant with a copy of a valid rental unit registration or annual rental unit registration renewal statement. The court expressly limited its holding to whether the tenant was entitled to recover the amount of rent she paid in excess of the rent permitted under the []RSO, even though the unit she rented lacked a certificate of occupancy and was not registered under the []RSO. [Citation.]

---

[4] The tenant also initially sought disgorgement of the entire rent paid to the landlord. However, that claim was dismissed prior to trial. (*Carter v. Cohen, supra,* 188 Cal.App.4th at pp. 1042-1043.)

8

The court held that the provisions of the []RSO applied to the unit the tenant rented, and that the tenant could recover the *excess* rent payments. [Citation.]" (*Lyles, supra,* 225 Cal.App.4th at p. 767.)

"The idea that the failure of the landlord to serve a copy of a registration statement upon the tenant would lead to a forfeiture of all rent, thereby allowing the tenant to reside rent free in a unit and recover a treble damage penalty, would be an absurd and unreasonable consequence. The ordinance is part of a rent control provision. If a landlord violates the rent control law by charging excessive rent, then sanctions make sense. But the City Council could not have meant to impose such severe sanctions for failure to serve annually a registration statement. Until the registration statement is sent, allowing the withholding of rent appears to be the incentive provided by the City Council." (*Id.* at p. 768.)

As the RSO does not provide for the remedy sought by the plaintiff, the trial court here did not err in granting judgment on the pleadings.

*DISPOSITION*

The judgment is affirmed.  The respondents are to recover their costs on appeal.


*NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*


KUSSMAN, J.[*]

WE CONCUR:


KITCHING, Acting P. J.


ALDRICH, J.

---

[*]    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.