Filed 4/7/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ALEXANDRA M. TUBBS, as Personal Representative, etc., et al.,<br><br>    Plaintiffs and Appellants,<br><br>      v.<br><br>HARRY WILLIAM BERKOWITZ,<br><br>    Defendant and Respondent. | G056951<br><br>(Super. Ct. No. 30-2017-00914927)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Kim R. Hubbard, Judge.  Affirmed.

FitzGerald Yap Kreditor, Eoin L. Kreditor and Eric P. Francisconi for Plaintiffs and Appellants.

Lee, Hong, Degerman, Kang & Waimey, Douglas Smith and Nathaniel J. Tarvin for Defendant and Respondent.

\*        \*        \*

This appeal arises from a dispute between Janice Tubbs and her father, Harry William Berkowitz, regarding certain trust assets that Berkowitz transferred to himself after his wife passed away. Berkowitz and his wife, Janice Tubbs's parents, created The Berkowitz Family Trust (the Trust). The Trust provided for the allocation of assets to a surviving spouse's trust and a marital appointment trust (the Marital Trust) upon the death of either Berkowitz or his wife. The surviving spouse's trust and the Marital Trust included a general power of appointment allowing the surviving spouse to designate a person who would receive the Trust assets. Under that power of appointment, the surviving spouse could designate himself or herself as the person who would receive the assets. Berkowitz exercised this power of appointment after his wife passed away and transferred all the Trust assets to himself, effectively divesting Janice Tubbs and her children who were contingent beneficiaries.

Tubbs filed a petition requesting the court find that Berkowitz could not exercise his power of appointment to transfer the assets to himself. According to Tubbs, Berkowitz's fiduciary duties as the successor trustee limited his exercise of the power of appointment. Berkowitz filed a motion for summary judgment contending he had the right to transfer all assets to himself pursuant to the general power of appointment provisions, which allowed him to act in a nonfiduciary capacity.

The court granted Berkowitz's motion for summary judgment and found the general power of appointment provisions gave him unfettered discretion. Because the power of appointment was given to the surviving spouse, and not the trustee, the court rejected Tubbs's contention that Berkowitz's discretion was limited by his role as the successor trustee.

Tubbs appeals from the judgment in favor of Berkowitz and contends the court erred because Berkowitz was bound by his fiduciary duties as trustee when he exercised the general power of appointment. She claims Berkowitz acted in violation of those fiduciary duties by transferring all assets to himself and acted contrary to her

2

mother's intent to have her separate property pass to her children and grandchildren. We disagree because a general power of appointment enables the powerholder to act in a nonfiduciary capacity. Regardless, Berkowitz could not have breached any fiduciary duties by doing something that was expressly authorized under the terms of the trusts. We accordingly affirm the judgment.[1]

FACTS

*The Trust and General Power of Appointment*

In 2005, Berkowitz and his wife created the Trust of which they were trustees during their lifetimes. The Trust provided that, after the death of the first spouse, the trustee (the surviving spouse) was required to allocate the Trust's assets between the surviving spouse's trust and the Marital Trust. The surviving spouse's trust would include the surviving spouse's separate trust estate and interest in the community trust estate. The Marital Trust would include the deceased spouse's separate trust estate and interest in the community trust estate. While the surviving spouse's trust was revocable after the allocation, the Marital Trust was irrevocable and nonamendable. Both the surviving spouse's trust and the Marital Trust provided support for the surviving spouse for life, and then on the surviving spouse's death, the remaining assets of both trusts would be distributed to the children's trust and the grandchildren's trust. Berkowitz and his wife had two children, Tubbs and her brother, and three grandchildren (the children of Tubbs).

---

[1] This appeal was initially filed by Janice Tubbs. During the appeal's pendency, Janice Tubbs passed away. We thereafter granted a motion brought by Alexandra M. Tubbs and Makenzie L. Tubbs, as the personal representatives of Janice Tubbs, to substitute as the plaintiffs and appellants. For simplicity, we will refer to the plaintiffs throughout this opinion as "Tubbs" or "Janice Tubbs," with the understanding that the current plaintiffs are the personal representatives of Janice Tubbs.

The Marital Trust also provided the surviving spouse with a general power of appointment, which is the focus of this appeal. The relevant provision stated: "At any time during the surviving spouse's life, the trustee shall distribute all or any part of the trust, including accrued income and undistributed income, to such one or more persons and entities, including the surviving spouse or the surviving spouse's estate, and on such terms and conditions, outright, in trust, or by creating further powers of appointment, as the surviving spouse shall request by an acknowledged document that specifically refers to this power of appointment." The surviving spouse's trust included an identical provision.

In 2011, Berkowitz's wife passed away, requiring Berkowitz to allocate the Trust's assets as described above. In April 2017, Berkowitz filed a petition to confirm his proposed allocation of assets, among other things. After Tubbs filed objections to Berkowitz's petition, Berkowitz exercised his general power of appointment and appointed all assets in the Trust to himself, effectively divesting the contingent beneficiaries (which included Tubbs) of their right to distributions upon Berkowitz's death.

*Tubbs's Petition and Berkowitz's Motion for Summary Judgment*

In December 2017, Tubbs filed a petition alleging the general power of appointment provisions were "not intended to provide [Berkowitz with] unlimited powers to subvert the [T]rust." She accordingly requested the court to "interpret the powers of appointment . . . as provisions that were not intended to provide unlimited powers of appointment such that . . . the remainder beneficiaries . . . have vested rights to property, which are not subject to divestment." She also requested the court to interpret the Trust as requiring Berkowitz to act in a fiduciary capacity given his role as the successor trustee.

4

In March 2018, Berkowitz filed a motion for summary judgment on Tubbs's petition. He argued he "had the right and power" under the general power of appointment provisions to transfer all Trust assets to himself "for any reason or no reason." He claimed other provisions did not qualify or restrict his powers and "any rights of the remainder beneficiaries were entirely subordinate to [his] rights as powerholder." He further argued his role as trustee did not limit his rights because he "occupied two roles with regard to the Trust." While he had certain fiduciary obligations as a trustee, he claimed he "was also the donee of the powers of appointment, in which role he had no duties whatsoever to other beneficiaries . . . ."

In support of his motion, Berkowitz also filed a declaration testifying that the attorney who drafted the Trust "specifically discussed with [Berkowitz and his wife] the powers of appointment, and that they would allow [them], whoever survived the other, to do whatever he or she wished with the Trust's assets, without any limitation." Berkowitz further testified that he and his wife "both wished the other to be able to use [their] assets in any way he or she chose after the death of one of [them], without regard to [their] children's, grandchildren's, or any other person's wishes." The lawyer who drafted the Trust filed a declaration explaining that "[t]he powers of appointment were drafted by me and were included in the Trust to provide to the surviving trustor . . . the absolute power and discretion to appoint some or all of the assets of the Survivor's Trust and Marital Trust in any way which the survivor wished, including to themselves or their respective estates, and without regard to any other beneficiaries' interests in the Trust." Although the lawyer had no recollection of discussing the powers of appointment with Berkowitz and his wife, he declared "[i]t has always been my custom and practice to discuss specifically with the trustors the powers of appointment and the fact that they permit the surviving spouse unlimited discretion to use or devise the Trust's assets in any way they choose. . . . I have no doubt that I had a similar discussion with [Berkowitz and his wife] prior to their execution of the Trust."

5

Tubbs filed opposition to the summary judgment motion and argued Berkowitz's fiduciary duties as a trustee limited his rights to exercise his general power of appointment. She accordingly claimed Berkowitz did not have the "absolute power" to transfer all of the Trust's assets to himself. She further argued Berkowitz breached an implied covenant of good faith and fair dealing contained in the Trust and intended to protect the beneficiaries. In support of her opposition, she also filed a declaration testifying that her mother had made it clear that she wanted her separate property distributed to her children and grandchildren and that the Marital Trust was irrevocable to protect the children and grandchildren.

*The Court's Ruling*

After a hearing, the court granted Berkowitz's motion for summary judgment. The court found the general power of appointment provision "gives the surviving spouse as settlor essentially unfettered discretion to direct the trustee to distribute 'all or any part' of the Surviving Spouse Trust and/or Marital Trust to 'one or more persons . . . including the surviving spouse . . . outright' if such a request is made 'by an acknowledged document that specifically refers to the power[s] of appointment.'" According to the court, "the trustee has no discretion but to make the requested distribution; the trustee 'shall' do so."

The court also rejected the notion that Berkowitz's discretion was limited given his role as trustee because "the powers of appointment at issue [were] not given to the Trustee, but to the surviving settlor." The court explained: "If faced with the exercise of a power of appointment by Harry-as-Settlor . . . , Harry-as-Trustee has no discretion but to follow those directions." Finally, the court held the implied covenant of good faith and fair dealing could "not be invoked to limit or prohibit the apparently unfettered right reserved to the surviving spouse (i.e. Harry-as Settlor) to direct the

6

distribution of any or all of the Trust assets to anyone, including himself." The court entered judgment in Berkowitz's favor, and Tubbs appeals from that judgment.

DISCUSSION

Tubbs contends Berkowitz could not exercise his general power of appointment to transfer the Marital Trust assets to himself.[2] Her main argument is that Berkowitz violated his fiduciary duties as a trustee by transferring the assets to himself. In other words, she suggests Berkowitz could never exercise his general power of appointment to transfer assets to himself given his role as a trustee of the Marital Trust, which was irrevocable and nonamendable. She also claims Berkowitz acted contrary to her mother's intent, which was to have her separate property pass to her children and grandchildren. Because a power of appointment enables the powerholder to act in a nonfiduciary capacity and Berkowitz could not possibly have breached any fiduciary duties by doing something that was expressly authorized by the Marital Trust, we conclude the court did not err.

*Standard of Review*

A party is entitled to summary judgment "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) A triable issue of material fact exists only if "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826,

---

[2] Tubbs does not dispute Berkowitz could transfer the assets in the surviving spouse's trust to himself. She acknowledges that trust was revocable and amendable and included Berkowitz's separate property and community property share.

845.)  We review de novo the court's grant of summary judgment.  (*ABCO, LLC v. Eversley* (2013) 213 Cal.App.4th 1092, 1098.)  Although we conduct a de novo review, we "must presume the judgment is correct, and the appellant bears the burden of demonstrating error."  (*Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1376.)

*The Court Did Not Err*

"'""A power of appointment is a power conferred by the owner of property (the 'donor') upon another person (the 'donee') to designate the persons ('appointees') who will receive the property [ ('appointive property') ] at some time in the future."'""  [Citations.]  Such a power can be general—exercisable in favor of anyone, *including the holder of the power* or that person's estate—or limited—exercisable only in favor of the person or class specified in the instrument creating the power.  [Citation.]  A trust can be the 'creating instrument' that 'creates or reserves the power of appointment.'"  (*Estate of O'Connor* (2018) 26 Cal.App.5th 871, 879, fn. omitted, italics added.)

Here, the power of appointment provision in the Marital Trust provided that "the trustee *shall distribute* all or any part of the trust . . . to such one or more persons . . . *including the surviving spouse . . . as the surviving spouse shall request* by an acknowledged document that specifically refers to this power of appointment."  (Italics added.)  Tubbs concedes that this provision conferred a general power of appointment, and she does not suggest Berkowitz failed to follow the proper procedures for exercising his power of appointment.  Berkowitz accordingly had the "equivalent to a grant of absolute ownership."  (*Estate of Daily* (1982) 130 Cal.App.3d 993, 998; see *Estate of Kuttler* (1958) 160 Cal.App.2d 332, 338 [same].)  He could exercise the power in his own favor and had "the same freedom of disposition that [he would have] over his . . . own property."  (12 Witkin, Summary of Cal. Law (11th ed. 2019) Real Property, § 169.)

8

Despite the general power of appointment, Tubbs contends Berkowitz could not transfer the Marital Trust assets to himself because a trustee must comply with his fiduciary duties even if he has "'absolute,' 'sole,' or 'uncontrolled' discretion . . . ." (Prob. Code 16081, subd. (a).)[3] According to Tubbs, Berkowitz could not "violate his fiduciary duties through an artifice that gives him a supposedly different role" as the donee of the power of appointment. She suggests Berkowitz violated his "duty to administer the trust solely in the interest of the beneficiaries" (§ 16002, subd. (a)) and his "duty not to use or deal with trust property for [his] own profit [and to not] take part in any transaction in which [he] has an interest adverse to the beneficiary" (§ 16004, subd. (a).) But Tubbs ignores a key feature of a general power of appointment—it enables the donee to act "in a *nonfiduciary capacity*" unlike a trustee. (§ 610, subd. (f), italics added.) "The holder of a presently exercisable general power of appointment or power to withdraw property from a trust [also] has the rights of a person holding the power to revoke the trust . . . ." (§ 15803.) Tubbs cites no authority, nor has our research uncovered any, which holds that a donee cannot exercise a general power of appointment in his favor if he also is the trustee of an irrevocable trust.

Tubbs argues the Trust is "invalid and illusory" if "the roles of trustee and donee under a general power of appointment" are combined with "no fiduciary obligations owed by the trustee . . . ." She contends that "by designating the same person as the trustee and donee under a general power of appointment without any concomitant fiduciary duties owed by that person to the beneficiaries, the legal and equitable title to the trust property would merge and the trust would be extinguished." But here, the mere existence of a power of appointment did not effect a merger because until the power of appointment was exercised by removing all of the assets from the Trust, Tubbs and her children retained their contingent rights as beneficiaries. Those rights would continue to

---

[3] All further statutory references are to the Probate Code.

9

exist had the power of appointment been exercised as to fewer than all the assets. And, as explained above, as a matter of law Berkowitz had the same rights as one who could revoke the Trust. (§ 15803.) Berkowitz's exercise of the power did just that. The revocation of the Trust did not render it "invalid or illusory." It merely implemented a right given to the surviving spouse by the express language of the Trust.

To support her argument that "Berkowitz was bound by his fiduciary duties at all times when interacting with the Trust," Tubbs also points to the following Trust provision: "The Trustee shall exercise all of the powers in the Trustee's fiduciary capacity and only in such capacity." She claims this language means Berkowitz "could not act as a donee without the strictures of his duties as trustee . . . ." We do not interpret this provision so broadly. The provision appears in a section titled "Trust Administration Provisions" and merely states that the trustee must exercise his powers in his fiduciary capacity. It does not impose any restrictions on the separate role of a donee who exercises the general power of appointment. The law governing general powers of appointment clearly contemplates that the power can be exercised to the detriment of other beneficiaries. (§ 610, subd. (f) ["'Power of appointment' means a power that enables a powerholder *acting in a nonfiduciary capacity* to designate a recipient of an ownership interest in or another power of appointment over the appointive property" (italics added); Rest.2nd Property, Donatire Transfers (1986) § 11.4, com. a, p. 18 ["A general power of appointment gives the donee of the power the authority to confer on himself or herself the full benefit of the appointive assets to the exclusion of others"].) And, as explained below, Berkowitz could not have breached his fiduciary duties by carrying out what was explicitly required by the Marital Trust.

10

A trustee "has a duty to administer the trust according to the trust instrument . . . ." (§ 16000.) A trustee also only has the powers conferred by the trust instrument and the powers conferred by statute, unless limited by the trust instrument. (§ 16200.) Here, the very language of the Marital Trust allowed Berkowitz to act in his capacity as the surviving spouse (not the trustee) and designate himself as the recipient of the Trust assets. The Marital Trust then required the trustee to distribute the assets to any person designated by the surviving spouse, including the surviving spouse himself. Thus, under the plain terms of the Marital Trust, Berkowitz (acting as the trustee) was required to transfer the assets once he exercised the power of appointment in his favor. He could not possibly have breached any fiduciary duties by doing something that was expressly authorized and required under the terms of the Marital Trust. (*Hearst v. Ganzi* (2006) 145 Cal.App.4th 1195, 1207-1208 [trustees did not breach their fiduciary duties where their actions were explicitly authorized by the trust].)

Finally, we note that Berkowitz's exercise of his power of appointment would have been unobjectionable if he had resigned as trustee before exercising the power. In that scenario, the successor trustee (Tubbs) would have been required to transfer the assets to Berkowitz once he exercised the power of appointment in his favor. Tubbs claims "those are not the facts before this Court," but we see no reason why the result should be different where Berkowitz was both the donee and the trustee who had no discretion but to follow the terms of the power of appointment.

11

DISPOSITION

The judgment is affirmed.  Berkowitz shall recover his costs incurred on appeal.


                              IKOLA, J.

WE CONCUR:


ARONSON, ACTING P. J.


FYBEL, J.


12