[No. F049744. Fifth Dist. July 2, 2008.]

MARGARET JAMISON, as Trustee, etc., et al., Plaintiffs and Appellants, v. WILLIAM O. JAMISON, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part 1. of the discussion.

716

## COUNSEL

Gilmore, Wood, Vinnard & Magness and David M. Gilmore for Plaintiffs and Appellants.

Dowling, Aaron & Keeler, Lynne Thaxter Brown and Kenton J. Klassen for Defendant and Appellant.

## OPINION

**LEVY, J.**—Following the partition of property owned jointly by defendant and appellant, William O. Jamison, and plaintiffs and appellants, John O. Jamison, Sean O. Jamison, and Bryan O. Jamison, trial was held to value the property for the purpose of making adjustments by owelty. (Code Civ. Proc.,[1] § 873.250.) This property had been used as grazing land by the family for decades.

In his appeal, William challenges the trial court's finding that dividing the property into 40-acre "ranchettes" is the highest and best use for four of the subject parcels. According to William, there is no substantial evidence to support the trial court's conclusion that it is reasonably probable that such development will occur in the near future.

In the cross-appeal, John, Sean and Bryan, through Margaret Jamison as trustee and administrator of their estates (sometimes referred to collectively as John),[2] argue that the owelty awarded to them for the four parcels was inadequate because the court's value determination was not supported by substantial evidence. They further contend that prejudgment interest should have been awarded.

In the nonpublished part of this opinion we conclude the trial court's determination that 40-acre ranchettes is the highest and best use for the subject parcels is supported by substantial evidence. In the published portion we hold that John is precluded from challenging the adequacy of the owelty award on appeal due to his failure to timely move for a new trial on that issue. Finally, John is not entitled to prejudgment interest.

## BACKGROUND

William and John were brothers. Sean and Bryan were John's sons.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

[2] John, Sean and Bryan were tragically killed in a car accident in September 2006 and their estates became parties to this action. For purposes of clarity, these parties will be referred to by their first names in this opinion. No disrespect is intended.

At one time, William, John, Sean and Bryan owned several thousand acres of real property in Madera County as tenants in common. In November 1999, John and his sons filed a complaint for partition of all the parcels they owned as tenants in common with William.

Twelve of these parcels are situated east of State Highway 41 near State Route 145 (route 145). Eight parcels, designated 1 through 8, are north of route 145 and the remaining four parcels, designated 9 through 12, are south of route 145. The southern parcels are the subject of this appeal.

In 2003, the trial court entered an interlocutory judgment of partition awarding William the four parcels south of route 145 and John the parcels north of route 145. The court reserved the issue of owelty to be determined upon noticed motion by either party. William appealed the interlocutory judgment and this court affirmed. (*Jamison v. Jamison* (Dec. 9, 2004, F043100) [nonpub. opn.].)

To resolve the owelty issue, the trial court was required to determine the total acreage and value of each of the 12 parcels. Although trial did not commence until June 13, 2005, the property was valued as of April 8, 2003, the date of the interlocutory judgment of partition.

All of the parcels are zoned ARE-40, "AGRICULTURAL, RURAL, EXCLUSIVE, FORTY ACRE DISTRICT." As such, they can be subdivided into 40-acre parcels with one residence permitted on each parcel.

The parcels are also subject to Williamson Act (Gov. Code, § 51200 et seq.) contracts. A Williamson Act contract restricts the use of agricultural land to agricultural or compatible uses for an initial term of no less than 10 years. However, another year is automatically added to the contract on its anniversary date unless notice of nonrenewal of the contract is given. (Gov. Code, § 51200 et seq.)

The four southern parcels, i.e., 9 through 12, are within the "Rio Mesa Area Plan." This plan was adopted in 1995 and is designated as a new growth area in the Madera County general plan. Under the Rio Mesa plan, parcels 9 through 12 are designated for agricultural purposes except for approximately 50 acres in parcel 11 and approximately 80 acres in parcel 12. These portions of parcels 11 and 12 are designated as light industrial or low-density residential. However, other than a golf course, no development in the Rio Mesa area has taken place.

William's expert appraiser, James Palmer, testified that the highest and best use of the property for the foreseeable future is cattle grazing. In Palmer's opinion, it will be a "long time" before development occurs in the Rio Mesa

area, i.e., "ten years or more." Accordingly, Palmer valued parcels 9 through 12 at either $1,500 per acre or $1,000 per acre, depending on location. However, Palmer acknowledged that these parcels could legally be divided into 40-acre parcels and that each 40-acre parcel could have one residence. Moreover, it would be financially feasible because small parcels tend to sell for more than larger parcels. In fact, Palmer had recently appraised 40-acre parcels within the Jamison holdings at $3,500 per acre.

John's expert appraiser, Richard Grey, testified that the highest and best use of parcels 1 through 10 and portions of parcels 11 and 12 is cattle grazing and placed values of $1,100 to $1,400 per acre. However, Grey determined that the highest and best use of the remaining 130 acres in parcels 11 and 12 is light industrial or low density residential as designated in the Rio Mesa plan and placed a value of $32,600 per acre. Grey also acknowledged that the property had the potential to be divided into 40-acre parcels.

John testified that he did not think that the highest and best use of the agriculturally designated portions of parcels 9 through 12 is cattle grazing. Rather, he concluded that the highest and best use is 40-acre ranchettes. John opined that, as 40-acre ranchettes, the property value is $2,100 per acre.

William testified that he had divided other property in the same general area into 40-acre parcels. One of these parcels was sold for a little less than $4,000 per acre. Although William did not testify regarding either the highest and best use or value of parcels 9 through 12, two letters that he sent to Palmer in April 2002 were admitted into evidence. In those letters, William expressed his opinion that the highest and best use of parcels 9 through 12 is 40-acre ranchettes and that a low value is $3,000 per acre.

In its decision after trial on owelty, the trial court stated that the highest and best use of parcels 1 through 8 is cattle grazing and adopted Grey's valuation. However, the court concluded that division into 40-acre ranchettes is the highest and best use of parcels 9 through 12 and valued those parcels at $4,000 per acre.

William moved for a new trial before judgment was entered. He argued that the evidence was insufficient to justify the decision on parcels 9 through 12. In response, John asserted that there was more than substantial evidence to support the trial court's decision. John also requested prejudgment interest from the date of valuation. The trial court denied the new trial motion.

The trial court entered an interlocutory judgment determining owelty that adopted the findings it made in the decision after trial. The judgment did not award the prejudgment interest requested by John.

Thereafter, John moved for a new trial. According to John, the evidence was insufficient to justify the decision, inadequate damages were awarded, and there was newly discovered evidence. This motion was denied by operation of law.

## DISCUSSION

1. *William's appeal.**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

2. *John's cross-appeal.*

 a. *William's motion to dismiss.*

In his cross-appeal, John argues that the owelty award was inadequate because the $4,000 per acre value was not supported by either the testimony of an expert appraiser or a comparable sale within the Rio Mesa plan area. John further contends that he is entitled to prejudgment interest on the owelty award. William preliminarily responds that this cross-appeal must be dismissed because John cannot argue that the owelty was inadequate for the first time on appeal.

As noted above, both William and John moved for a new trial. William's notice of intent to move for a new trial was served and filed on November 16, 2005. Accordingly, John had 15 days after service of William's notice of intent, i.e., November 30, 2005, to file and serve his own notice of intent to move for a new trial. (§ 659.) However, John did not file and serve his notice of intent until January 20, 2006. Thus, John's new trial motion was untimely and, as such, was not ruled on by the trial court.

A failure to timely move for a new trial ordinarily precludes a party from complaining on appeal that the damages awarded were either excessive or inadequate, whether the case was tried by a jury or by the court. (*Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 122 [135 Cal.Rptr. 802].) The power to weigh the evidence and resolve issues of credibility is vested in the trial court, not the reviewing court. (*Schroeder v. Auto Driveaway Co.* (1974) 11 Cal.3d 908, 919 [114 Cal.Rptr. 622, 523 P.2d 662].) Thus, a party who first challenges the damage award on appeal, without a motion for a new trial, unnecessarily burdens the appellate court with issues that can and should be resolved at the trial level. (*Ibid.*) Consequently, if ascertainment of the amount of damages turns on the

---

 * See footnote, *ante,* page 714.

credibility of witnesses, conflicting evidence, or other factual questions, the award may not be challenged for inadequacy or excessiveness for the first time on appeal. (*County of Los Angeles v. Southern Cal. Edison Co.* (2003) 112 Cal.App.4th 1108, 1121 [5 Cal.Rptr.3d 575].)

The owelty award was based on the value of real property. Thus, the award turned on a question of fact, i.e., a question to be resolved by the trial court. (*County of Los Angeles v. Southern Cal. Edison Co., supra*, 112 Cal.App.4th at p. 1121.) Accordingly, under the above-cited authorities, John is precluded from challenging the amount of the owelty award on appeal because he did not timely move for a new trial.

John concedes that his motion for a new trial was untimely. Nevertheless, he contends that he can challenge the amount of the owelty awarded on appeal because owelty is not damages.

■ Civil Code section 3281 provides that "Every person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages." In other words, the concept of "damages" requires there to be compensation, in money, recovered by a party for loss or detriment suffered through the acts of another. (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 826 [274 Cal.Rptr. 820, 799 P.2d 1253].)

John points out that, because owelty is simply compensation to correct the inequality in values that result from a division of property in kind, it is not damages, i.e., no fault or unlawfulness is required. However, in this context, owelty versus damages is a distinction without a difference. Whether the award is termed owelty or damages, it still requires an evaluation of the amount awarded in light of the evidence presented at trial, an issue that can and should be resolved at the trial court level. Thus, the same reasoning for requiring a motion for a new trial applies to both owelty awards and damage awards. Accordingly, here, a new trial motion was a prerequisite to John's challenge to the adequacy of the owelty award on appeal.

An analogous situation was presented to the court in *County of Los Angeles v. Southern Cal. Edison Co.* There, in a court trial, the County of Los Angeles alleged that the buyer and seller of two powerplants had underpaid the documentary transfer taxes. This tax is calculated based on the value of the realty. On appeal, the county alleged that the trial court did not correctly determine the value to be taxed and thus the delinquent tax award was inadequate. However, because the county had not moved for a new trial, the appellate court concluded that the county could not make this argument for the first time on appeal. As with owelty, the concepts of fault and unlawfulness do not enter into the calculation of the amount of documentary transfer

taxes due on a transaction. Thus, the delinquent taxes awarded to the county were not technically "damages." Nevertheless, the court held that the county's failure to move for a new trial precluded the challenge to the award on appeal. (*County of Los Angeles v. Southern Cal. Edison Co., supra,* 112 Cal.App.4th at pp. 1121–1122.)

█ As discussed above, this court will not consider John's challenge to the adequacy of the owelty award.[3] William's analysis in his motion to dismiss is correct. However, this conclusion does not dispose of the entire cross-appeal. John's claim that the trial court erred in not awarding prejudgment interest under Civil Code section 3287 is reviewable on appeal. John argues this section mandates an interest award, i.e., the court made a legal error. The failure to move for a new trial does not preclude a party from urging legal errors in a trial on damages. (*Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co., supra,* 66 Cal.App.3d at p. 122.) Accordingly, William's motion to dismiss the cross-appeal is denied.

b. *John is not entitled to prejudgment interest.*

█ Civil Code section 3287, subdivision (a), provides, in part: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . ." Thus, prejudgment interest is authorized only if the damages were "certain, or capable of being made certain by calculation." "Damages that must be determined by the trier of fact based on conflicting evidence of the property value do not satisfy this requirement." (*County of Los Angeles v. Southern Cal. Edison Co., supra,* 112 Cal.App.4th at p. 1123.)

Here, to make the owelty award, the trial court was required to determine the property values of the various parcels. Moreover, the court was presented with conflicting evidence of those values. Accordingly, the requirements under Civil Code section 3287 were not met. Thus, John is not entitled to prejudgment interest.

John further argues that he should either be allowed a trial on the postvaluation appreciation of parcels 9 through 12 or the trial court should be directed to retry the valuation issue with a more recent valuation date. John contends that the two-year delay between the valuation date and the trial led to an inequitable result that could be corrected upon retrial.

---

[3] Nevertheless, if John's challenge were reviewable on the merits, this court would affirm the trial court's $4,000 per acre valuation. John's and William's opinions on value and the sales of ranchettes ranging from $2,150 to $5,000 per acre provide substantial evidence for the trial court's ruling.

This argument is simply another facet of John's claim that the owelty award was inadequate. However, as discussed above, John is precluded from challenging the adequacy of the award due to his failure to move for a new trial.

## DISPOSITION

The "INTERLOCUTORY JUDGMENT DETERMINING OWELTY" is affirmed. Each party shall bear their own costs on appeal.

Vartabedian, Acting P. J., and Dawson, J., concurred.