Filed 10/16/23  Mac v. Lopez CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
| --- | --- |
| SONNY MAC,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>AURELIO GOMEZ LOPEZ,<br><br>     Defendant and Appellant. | D081094<br><br><br>(Super. Ct. No. 37-2020-00036703-CU-PA-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, John S. Meyer, Judge.  Affirmed.

Straus Meyers and Douglas J. Petkoff for Defendant and Appellant.

Andy Van Le and Associates and Andy Van Le for Plaintiff and Respondent.

## INTRODUCTION

A jury found Aurelio Gomez Lopez's negligence in a motor vehicle collision was a substantial factor in causing injuries to Sonny Mac.  It awarded Mac a total of $302,595.09 in economic and noneconomic damages, including $200,000 for future medical expenses.  On appeal, Lopez asserts substantial evidence does not support the award for future medical expenses.

He contends the testimony of Mac's medical expert that $200,000 was "a reasonable estimate" for surgery and follow-up care to treat Mac's neck injuries was "wildly speculative" and "of poor 'quality,' " and thus the jury must have speculated on damages. We affirm.

## BACKGROUND

Mac and Lopez were both driving in adjacent lanes on the highway in morning rush hour traffic. Lopez was in a truck and Mac was in a minivan. As Lopez changed lanes, his truck hit the back of Mac's minivan.

After the accident, Mac "felt dull pain" in her neck that progressed to "sharp pain" the next day as if needles were "pinching on" her neck and "radiat[ing] down to [her] shoulder," her hands, her fingers, and then she "started to feel numbness." She also started to feel pain at the "back of [her] skull," have "really bad headaches" and felt "nauseated." A couple nights after the accident, she vomited "through the whole night."

Three months of chiropractic treatment helped, but her neck pain, achiness, vomiting, and headache eventually returned. She then went to see a neurosurgeon after her neck pain got worse. She had a "pinching nerve" and muscle spasms that were "very painful" and led to headaches and vomiting. Although physical therapy and pain management treatment gave her "temporary relief," eventually "all the symptoms" returned.

Mac's claim for future medical expenses was supported by the unchallenged testimony of her expert, Dr. Kevin Yoo, M.D., a board-certified neurological surgeon with 18 years of experience performing brain and spine surgeries and treating approximately 250 to 300 patients a year. Lopez did not object or challenge Dr. Yoo's qualifications in neurosurgery when Mac offered him as her medical expert.

2

Dr. Yoo treated Mac as a patient and also reviewed her medical records from other doctors, including a physical therapist, pain specialist, and chiropractor. He diagnosed Mac with cervical disc issues, including disc displacement, neck pain, and pain in her upper extremities. Mac completed the care that Dr. Yoo recommended, including physical therapy, cervical epidural injections, and chiropractic care. However, when Mac continued to experience neck pain despite these treatments, Dr. Yoo determined she had "a failure of conservative care" and recommended she consider cervical spine surgery. He explained that "eventually the neck pain will get worse and worse to the point where she will have to succumb to having a surgical procedure." He opined, "by a degree of medical probability that [the] car crash . . . caused [ ] Mac's symptoms arising out of the neck pain and leading to the surgery."

Dr. Yoo testified the cost of the surgery varied depending on whether it is done on an inpatient or outpatient basis. He estimated the cost of the surgery *alone* on an outpatient basis would be "somewhere between" $50,000 to $100,000, and if on an inpatient basis, with the added costs of hospital care, it would be "somewhere between [$]100[,000] to [$]150[,000] to [$]200,000." He explained he gave himself "a lot of latitude" in providing his "reasonable estimate," and that "it's a big range."

Dr. Yoo then testified, "If *I* did Ms. Mac's surgery, I would do it as outpatient, and I would say . . . $100,000 is probably a good estimate just for the surgery alone, but then you've got to include all the post-op care, which I did not include in that." (Italics added.) Dr. Yoo explained Mac would incur costs for physical therapy, additional pain care management, follow-up visits and imaging, and for "[t]he recovery process itself." He opined that a

"reasonable estimate" for outpatient surgery by him and follow-up care by other medical professionals would be a total $200,000.

Lopez did not make any objections during Dr. Yoo's entire direct testimony. On cross-examination, Lopez's counsel asked Dr. Yoo only five questions, to confirm he assessed Mac with cervical disc degeneration at the C4-C5 and C5-C6 levels and to explain that cervical disc degeneration was "[s]imply put, aging . . . over time." Lopez's counsel did not ask Dr. Yoo any questions regarding his estimate of Mac's future medical expenses if she proceeded with cervical spine surgery. Lopez also did not present any expert of her own to refute Mac's claim for future medical expenses.

## DISCUSSION

## I.

### *Lopez Is Precluded from Challenging the Amount of the Jury's Future Medical Damages Award for Failure to File a Motion for New Trial*

Mac contends Lopez waived his right to argue that damages were excessive because he failed to file a motion for a new trial. We agree.

In his opening brief on appeal, Lopez states "[t]he only issue on appeal is the *amount* of future medical expenses." (Italics added.) While conceding that "[a] reasonable jury . . . may have awarded damages somewhere in the range" of Dr. Yoo's estimate, he assigns error to the jury's award because it "adopted the outer limit of the possible range he provided for future medical expenses as an award." Lopez further argues that Mac's counsel's improper questioning and argument affected the jury's award of the amount so that they "felt comfortable . . . awarding an amount of $200,000.00" rather than a lower amount. Further still, he argues the jury erred when it speculated "as to the *amount* of future medical expenses." (Italics added.) Thus, Lopez

4

framed his argument as a challenge to the *amount* of damages and effectively claims it was excessive.[1]

Lopez has waived any argument that the award was excessive because he failed to move for a new trial. (*Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 759 (*Greenwich*) ["A claim of excessive or inadequate damages cannot be raised on appeal unless appellant first urged the error in a timely motion for new trial."]; *Jamison v. Jamison* (2008) 164 Cal.App.4th 714, 719 ["A failure to timely move for a new trial ordinarily precludes a party from complaining on appeal that the damages awarded were excessive."].) As the court in *Jamison* explained, trial courts "weigh the evidence and resolve issues of credibility," not appellate courts. (*Jamison*, at p. 719.) By challenging the damages award for the first time on appeal rather than through a motion for new trial, Lopez has "unnecessarily burden[ed] the appellate court with issues that can and should [have been] resolved at the trial level." (*Ibid.*) Accordingly, Lopez waived his claim that damages were excessive.

## II.

*Substantial Evidence Supports the Jury's Decision to Award*
*Future Medical Damages, In Any Amount*

Only after Mac asserted that Lopez was precluded from asserting an excessive damages claim, did Lopez argue in his reply brief that the evidence was insufficient to award *any* damages at all. "[W]e do not consider arguments raised for the first time in a reply brief." (*Doe v. McLaughlin* (2022) 83 Cal.App.5th 640, 657.) But even if Lopez had timely asserted the

---

1    This was confirmed by Lopez's appellate counsel at oral argument, who stated there was no substantial evidence to support "the amount that [the jury] actually did award."

5

argument, we conclude there was substantial evidence supporting the jury's award of future medical expenses.

As we have noted, because Lopez did not file a motion for a new trial to challenge the amount of the jury's damages award, we are limited to determining "[w]hether the evidence was sufficient to support the award . . . in *any* amount." (*Greenwich*, *supra*, 190 Cal.App.4th at p. 759.) We review a contention that evidence does not support a damage award for substantial evidence. (*Yassin v. Solis* (2010) 184 Cal.App.4th 524, 529.) We accept all evidence which supports the judgment, disregard the conflicting evidence, and draw all reasonable inferences to uphold the verdict. (*Major v. Western Home Ins. Co.* (2009) 169 Cal.App.4th 1197, 1203, fn. 1.) "The testimony of a single credible witness . . . may constitute 'substantial evidence.' " (*Id.* at p. 1208.)

Civil Code section 3283 provides for the recovery of future damages. It states: "Damages may be awarded, in a judicial proceeding, for detriment resulting after the commencement thereof, or certain to result in the future." "The fact that the amount of future damages may be difficult to measure or subject to various possible contingencies does not bar recovery." (*Regalado v. Callaghan* (2016) 3 Cal.App.5th 582, 602 (*Regalado*).) Relevant here, "[i]t is 'not required' for a doctor to 'testify that he or she is reasonably certain that the plaintiff would be disabled in the future. All that is required to establish future disability is that from all the evidence, including the expert testimony, if there be any, it satisfactorily appears that such disability will occur with reasonable certainty.' " (*Garcia v. Duro Dyne Corp.* (2007) 156 Cal.App.4th 92, 93.)

On this record, we conclude Dr. Yoo's *unchallenged* expert testimony was substantial evidence to support the jury's decision to award future

6

medical damages. (See *Hope v. California Youth Authority* (2005) 134 Cal.App.4th 577, 589 ["the testimony of a single witness may be sufficient"].) Contrary to Lopez's argument, the jury's award is not invalidated merely because Dr. Yoo gave a range for Mac's future expenses due to contingencies such as whether the surgery would be outpatient or inpatient. (*Regalado*, *supra*, 3 Cal.App.5th at p. 602.) In *Regalado*, like here, "[t]he fact that there was some uncertainty as to whether [plaintiff] would . . . requir[e] additional surgery does not preclude a finding that it was reasonably certain he would need future surgery." (*Ibid*.) In *Ostertag v. Bethlehem Shipbuilding Corp.* (1944) 65 Cal.App.2d 795, the plaintiff's expert testified: It was " 'reasonable to assume' " plaintiff was " 'going to have trouble . . . in the future. Just how much, I don't know. Just what the course of that trouble will be, I don't know.' " (*Id*. at pp. 805–806.) The court found this testimony "sufficient to support a finding of future damages with reasonable certainty." (*Id*. at p. 806.) Similarly, in *Guerra v. Balestrieri* (1954) 127 Cal.App.2d 511, 518–519, the expert's opinion on future damages was based on plaintiff's pain two years after the accident and his experience that " '[f]requently in this type of neck injury a patient will continue to have symptoms indefinitely' and '[i]t may last forever; . . . it may get worse; he may improve somewhat.' " The court held, "[f]rom such testimony the jury could reasonably conclude that plaintiff was reasonably certain to experience some pain and disability for the rest of his life." (*Id*. at p. 519.)

Lopez also complains that Mac's attorney made "improper" statements and asked "leading and therefore improper" questions during Dr. Yoo's testimony. Lopez's evidentiary challenges are forfeited because he failed to object in the trial court. (*Padilla v. Greater El Monte Community Hospital* (2005) 129 Cal.App.4th 667, 670 ["Failing to timely object to a purported

error when it occurs in the trial court ordinarily waives the objection on appeal."].)  Additionally, the court instructed that "[w]hat the attorneys say during the trial," including their statements and questions, "are not evidence."  (CACI No. 5002.)  "[W]e presume the jury follows its instructions 'and that its verdict reflects the legal limitations of those instructions imposed.' "  (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 803–804.)

## DISPOSITION

The judgment is affirmed.  Respondent shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

DO, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.

8